## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA**
Plaintiff

v.

**William Rosado-Cancel (1)**
**Juan Antonio Rosario-Cintron (2)**
Defendants

**Criminal No. 13-731 (DRD)**

## OPINION & ORDER

Defendants William Rosado-Cancel[1] and Juan Antonio Rosario-Cintrón ("Defendants") move the Court to dismiss the two-count indictment on double jeopardy and/or issue preclusion grounds in light of the Supreme Court's landmark *Sanchez Valle* decision. *See Puerto Rico v. Sanchez Valle*, 136 S. Ct. 1863 (2016). However, it is a "fundamental principle that an accused must suffer jeopardy before he can suffer double jeopardy." *Serfass v. United States*, 420 U.S. 377, 393 (1975). Until now, despite being charged in commonwealth court, Defendants have yet to suffer jeopardy. Defendants' issue preclusion argument also falters for several reasons: (1) jeopardy did not attach to the commonwealth pretrial proceedings, (2) the argument was untimely, and/or (3) there was no privity between the federal and Puerto Rico prosecutors. For the reasons set forth below, the Court hereby **ADOPTS** Magistrate Judge Marcos E. López's reasoning and **DENIES** each Defendant's motion to dismiss.[2]

---

[1] The Court notes that this defendant has already pled guilty in this case. *See* Docket No. 142.
[2] Both defendants use the same arguments, challenge the same charges, and are part of the same nucleus of facts. As such, the Court addresses both motions jointly in the instant opinion and order.

## I.    FACTS AND PROCEDURE

### A.  The Charges[3]

According to Defendants' motions, they were each subjected to parallel weapons charges in both federal and local court.   At the federal level, Defendants are each charged with aiding and abetting each other to illegally possess two firearms: (1) a machinegun, in violation of 18 U.S.C. §§ 2 and 922(o), and (2) a firearm with a removed, altered, and obliterated serial number, in violation of 18 U.S.C. §§ 2 and 922(k).   Docket No. 13 (indictment).   Conversely, at the commonwealth level, Defendants were charged with, *inter alia*, illegally possessing the same two firearms: (1) a machinegun, in violation of 25 P.R. Laws § 458f, and (2) a firearm with an obliterated serial number, in violation of 25 P.R. Laws § 458i(b).   Docket Nos. 139, ¶¶ 10 and 40; 168, ¶¶ 11 and 41; and 147, ¶ 37.

### B.  The Commonwealth Proceedings

Before a defendant is put to trial in a commonwealth court, Puerto Rico procedural rules and case law generally require the holding of a preliminary hearing wherein a presiding judge decides whether there is probable cause that the defendant committed an offense.   34 P.R. Laws Ap. II § 23.   At this preliminary hearing, which is generally open to the public, both the commonwealth government and the defendant have the right to present evidence and cross examine witnesses.   *Id.*  To ensure an effective cross examination, the commonwealth government is required to disclose all

---

[3] As the commonwealth charging documents have not been submitted for inspection and because the commonwealth statutes in question also criminalize various forms of criminal conduct unrelated to the federal charges, this Court is unable to definitively rule that the charged conduct at both levels are the "same offense" for double jeopardy purposes.  *See* U.S. Const. amend. V ("No person shall be . . . subject for the same offense to be twice put in jeopardy of life or limb").   However, this matter need not detain us as the motion would still be denied even if the Court presumes that these charges are equivalent.

sworn statements of any witness who testifies at this hearing. *Id.* Other than a few exceptions mentioned in the rule, the presiding judge must make the aforementioned probable cause determination using only evidence that would be admissible in an eventual trial. *Id.*

If the commonwealth government fails to carry this modest burden, the law provides for one *de novo* preliminary hearing before a different judge with all the same procedural protections. 34 P.R. Laws Ap. II § 24. However, if the government is unsuccessful at this *de novo* hearing, it must forever hold its peace. *Id.* In other words, the commonwealth government has two at bats; if it strikes out at both preliminary hearings, the game is over. That is precisely what occurred here: the commonwealth government exhausted both preliminary hearings for each Defendant without success.[4] There is no debate that any further prosecution for the firearm counts is procedurally barred in local court. On the other hand, the parties dispute whether this local procedural bar should also close the doors on this federal prosecution.

## C. The Arguments

Faced with the federal government's two-count indictment, Defendants seek double jeopardy protection under the Fifth Amendment. Defendants profess that double jeopardy should attach to the commonwealth proceedings even though no trial was ever held. Each Defendant reasons that the commonwealth's failure to meet the low "probable cause" standard on two separate occasions before two separate judges equates to there not being enough evidence to convict them in a full-fledged trial. Moreover, Defendants belatedly invoke the doctrine of issue preclusion, which would

---

[4] According to each Defendant's motion, their respective *de novo* preliminary hearing culminated in their favor on January 21, 2016. Docket Nos. 139, ¶ 12; 168, ¶ 13.

purportedly prohibit this Court from disturbing the commonwealth judges' "no probable cause" findings.  The Court referred each Defendant's motion to the Hon. Marcos E. López for a report and recommendation.[5]

## II.   APPLICABLE LAW

### A.  Referrals to Magistrate Judges

The Court may refer dispositive motions to a United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  *See* Local Rule 159; *Matthews v. Weber*, 423 U.S. 261 (1976).  Any party may contest the Magistrate Judge's report and recommendation by filing its objections.  Fed. R. Crim. P. 59(b); 28 U.S.C. § 636(b)(1).  "A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.*

### B.  Double Jeopardy

#### i.   Singular Sovereignty

"No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  However, there is more to this enduring constitutional text than meets the eye.  "The ordinary rule under that Clause is that a person cannot be prosecuted twice for the same offense."  *Sanchez Valle*, 136 S.Ct. at 1870.  Yet, "the dual-sovereignty carve-out from the Double Jeopardy Clause" states that "two prosecutions . . . are not for the same offense if brought by different

---

[5] As will be discussed, the Magistrate Judge had no occasion to address the issue preclusion argument as it first appeared in each Defendant's objection to the Magistrate's recommendation.

sovereigns—even when those actions target the identical criminal conduct through equivalent criminal laws." *Id.* (citing *United States v. Lanza*, 260 U.S. 377, 382 (1922)). "[W]hen the same act transgresses the laws of two sovereigns, it cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences." *Id.* (citing *Heath v. Alabama*, 474 U.S. 82, 88 (1985)). Thus, "a single act" may give "rise to distinct offenses—and thus may subject a person to successive prosecutions—if it violates the laws of separate sovereigns." *Id.* at 1867.

On June 9, 2016, the United States Supreme Court affirmed the Puerto Rico Supreme Court's determination that the federal government and the Commonwealth of Puerto Rico are not "separate sovereigns" for double jeopardy purposes. *Id.* at 1868. This conclusion was attained after evaluating the "single criterion" of consequence under the dual-sovereignty test: "whether [the United States and Puerto Rico] draw their authority to punish the offender from distinct sources of power." *Id.* at 1871 (citing *Heath*, 474 U.S. at 88). The Supreme Court ruled that, "because the oldest roots of Puerto Rico's power to prosecute lie in federal soil," Puerto Rico and the United States may not "successively prosecute a single defendant for the same criminal conduct." *Id.* at 1868. Therefore—in this limited context—Puerto Rico is not on equal footing with any of the fifty states of the union or the "Indian tribes."

### ii.   When Jeopardy Attaches

"Any double jeopardy analysis essentially splinters into three questions: (1) whether jeopardy ever attached; (2) whether the first proceeding was a decision on the merits; and (3) whether the subsequent proceeding involves the 'same offense.'" *United*

*States v. Szpyt*, 785 F.3d 31, 36 (1st Cir. 2015), *cert. denied*, 136 S. Ct. 800 (2016), and *cert. denied sub nom.*, *Dellosantos v. United States*, 136 S. Ct. 800 (2016); *see also United States v. Pacheco*, 434 F.3d 106, 112 (1st Cir. 2006).

"In the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn." *Serfass*, 420 U.S. at 388 (citing *Downum v. United States*, 372 U.S. 734 (1963) and *Illinois v. Somerville*, 410 U.S. 458 (1973)); *see also Martinez v. Illinois*, 134 S. Ct. 2070, 2074, *reh'g denied*, 135 S. Ct. 342 (2014) ("There are few if any rules of criminal procedure clearer than the rule that 'jeopardy attaches when the jury is empaneled and sworn.'" (citing *Crist v. Bretz*, 437 U.S. 28, 35 (1978); *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569 (1977); *Serfass*, 420 U.S. at 388; and 6 W. LaFave, J. Israel, N. King, & O. Kerr, Criminal Procedure § 25.1(d) (3d ed. 2007))). "In a nonjury trial, jeopardy attaches when the court begins to hear evidence." *Id.* (citing *McCarthy v. Zerbst*, 85 F.2d 640, 642 (10th Cir. 1936) and *Wade v. Hunter*, 336 U.S. 684, 688 (1949)). Further, the Supreme Court "has consistently adhered to the view that jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is 'put to trial before the trier of facts, whether the trier be a jury or a judge.'" *Id.* (collecting cases).

## C. Issue Preclusion[6]

### i. Constitutional Origins

Notwithstanding the aforementioned discussion, issue preclusion is a particular "component of the Double Jeopardy Clause" that merits an individualized introduction.

---

[6] Following the Supreme Court's lead, this Court eschews the use of the older "collateral estoppel" terminology in favor of "issue preclusion," which is the "more descriptive term." *See Bravo-Fernandez v. United States*, 137 S. Ct. 352, 356 n. 1 (2016) (citing *Yeager v. United States*, 557 U.S. 110, 120, n. 4 (2009) and Restatement (Second) of Judgments § 27, Comment b, pp. 251–252 (1980)).

*See Bravo-Fernandez*, 137 S. Ct. at 356. "In criminal prosecutions, as in civil litigation, the issue-preclusion principle means that 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Id.* (citing *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)).

To the extent that it emanates from "the Fifth Amendment's guarantee against double jeopardy," issue preclusion will not apply unless jeopardy attached to the prior prosecution. *United States v. Bonilla Romero*, 836 F.2d 39, 42-43 (1st Cir. 1987). However, whether a criminal defendant's issue preclusion rights exist outside of the double jeopardy context is an open question in this circuit. *See Id.* (identifying the possibility without deciding the issue); *Hoag v. New Jersey*, 356 U.S. 464, 471 (1958) (declined to decide whether "collateral estoppel" is required by due process in state criminal trials); *see also United States ex rel. DiGiangiemo v. Regan*, 528 F.2d 1262, 1265-67 (2d Cir. 1975), *cert. denied*, 426 U.S. 950 (1976) (identifying issue preclusion as a facet of due process); *Showery v. Samaniego*, 814 F.2d 200, 203-04 (5th Cir. 1987) ("[W]e decline to find the collateral estoppel doctrine cognizable as a constitutional claim apart from those claims that are recognized under the double jeopardy clause"); *Loera v. United States*, 714 F.3d 1025, 1029 (7th Cir. 2013) ("And so collateral estoppel is applicable in a criminal proceeding without reference to the double jeopardy clause"); *Chavez v. Weber*, 497 F.3d 796, 804 n. 5 (8th Cir. 2007) ("Collateral estoppel is a separate issue from double jeopardy."). Reading issue preclusion into other constitutional or common law sources is not a matter of semantics, for doing so

would potentially expand its finality protections to rulings in proceedings where jeopardy never attached.

### ii.    Privity Requirement

"The requirements of [issue preclusion] include, *inter alia*, that the party to be precluded from relitigating an issue decided in a previous litigation was either a party or in privity with a party to that prior litigation." *Bonilla Romero*, 836 F.2d at 43 (citing 1B J. Moore, J. Lucas & T. Currier, Moore's Federal Practice ¶¶ 0.441[3], 0.443[1] (2d ed. 1984) and Restatement (Second) of Judgments §§ 27, 39, 41 (1982)).  The First Circuit has previously ruled that this requirement "was not satisfied [when] federal prosecutors were neither a party, nor in privity with a party, to the suppression hearing in [a] Puerto Rico [court]." *Id.*

"Under the concept of privity, a non-party to an action nonetheless may be bound by the issues decided there if it substantially controls, or is represented by, a party to the action." *Id.* (citing, *inter alia*, Restatement (Second) of Judgments §§ 39, 41 (1982); *Montana v. United States*, 440 U.S. 147, 154 (1979); *Chicago, R.I. & P. Ry. Co. v. Schendel*, 270 U.S. 611, 618-19 (1926); and *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1572 (Fed. Cir. 1983)).  "The party estopped due to representation by a party to the action must have been 'so closely related to the interest of the party to be fairly considered to have had his day in court.'" *Id.* (citing *In re Gottheiner*, 703 F.2d 1136 (9th Cir. 1983)).  "There must be a 'substantial identity' of the parties such that the party to the action was the virtual representative of the party estopped." *Id.* (citing *Schendel*, 270 U.S. at 621 and *Pan American Match Inc. v. Sears, Roebuck and Co.*,

454 F.2d 871 (1st Cir.1972)).  "Whether a party is virtually representative of a non-party is a question of fact determined on a case-by-case basis."  *Id.* (collecting cases).

### III.   LEGAL ANALYSIS

#### A. Beyond the *Serfass*

The first question before the Court is "whether jeopardy ever attached" to the commonwealth proceedings.  As previously adverted to, the United States and Puerto Rico are the same sovereign for double jeopardy purposes.  Thus, despite the various procedural distinctions between both jurisdictions, federal double jeopardy attaches to commonwealth trials.  The Court, therefore, turns to the traditional mode of analysis to decide whether jeopardy attached to each Defendant's two preliminary hearings.

Unless Defendants were "put to trial before the trier of facts, whether the trier be a jury or a judge," "jeopardy does not attach."  *Serfass*, 420 U.S. at 388 (collecting cases).  Yet, Defendants were not subjected to any trial.  Preliminary hearings in a commonwealth court, despite their numerous procedural safeguards, do not amount to a full-fledged trial.  In this case "the [commonwealth judges were] without power to make any determination regarding [Defendants'] guilt or innocence."  *Id.* at 389.  At best, the presiding judges had the authority to simply rule that there was sufficient evidence for the cases to go to trial before another judge.

Notwithstanding the fact that no trial was ever held, Defendants argue that the favorable results of these preliminary hearings should equate to an acquittal on the merits to which jeopardy should attach.  Faced with a similar "attachment" argument in *Serfass*, the Supreme Court pronounced the following:

> Petitioner acknowledges that 'formal or technical jeopardy had not attached' at the time the District Court ruled on his motion to dismiss the

indictment. However, he argues that because that ruling was based on "evidentiary facts outside of the indictment, which facts would constitute a defense on the merits at trial,' . . . it was the 'functional equivalent of an acquittal on the merits' and 'constructively jeopardy had attached.' The argument is grounded on two basic and interrelated premises. First, petitioner argues that the Court has admonished against the use of 'technicalities' in interpreting the Double Jeopardy Clause, and he contends that the normal rule as to the attachment of jeopardy is merely a presumption which is rebuttable in cases where an analysis of the respective interests of the Government and the accused indicates that the policies of the Double Jeopardy Clause would be frustrated by further prosecution. . . . Second, petitioner maintains that the disposition of his motion to dismiss the indictment was, in the circumstances of this case, the 'functional equivalent of an acquittal on the merits,' and he concludes that the policies of the Double Jeopardy Clause would in fact be frustrated by further prosecution. . . . We disagree with both of petitioner's premises and with his conclusion.

*Id.* at 389-90.  The *Serfass* court soundly rejected these attempts to bring flexibility to the analysis of when jeopardy attaches.  While the Supreme Court acknowledged that they "have disparaged 'rigid, mechanical' rules in the interpretation of the Double Jeopardy Clause," they emphasized that they have "consistently adhered to the view that jeopardy does not attach until a defendant is 'put to trial before the trier of the facts, whether the trier be a jury or a judge.'"  *Id.* at 390-91.  The high court accentuated that "[t]his is by no means a mere technicality, nor is it a 'rigid, mechanical' rule."  *Id.* at 391.  This reasoning is grounded in part on the reality that "[w]hen a criminal prosecution is terminated prior to trial, an accused is often spared much of the expense, delay, strain, and embarrassment which attend a trial."  *Id.*  "Without risk of a determination of guilt, jeopardy does not attach, and . . . further prosecution" does not create double jeopardy. *Id.* at 391-92.  Hence, Defendants' double jeopardy challenges must be rejected.

**B. Issue Preclusion Issue**

    **i.   No Strings Attached**

As issue preclusion is a particular "component of the Double Jeopardy Clause," the foregoing analysis applies in the same fashion and yields the same result. *See Bravo-Fernandez*, 137 S. Ct. at 356. Thus, because jeopardy did not attach to the commonwealth proceedings, issue preclusion—at least in its double jeopardy form—must be repudiated. *See Bonilla Romero*, 836 F.2d at 42-43 (discarding an issue preclusion argument because "jeopardy never attached during the local prosecution."). Yet, this fact alone may not be enough to put an issue preclusion argument to rest.

As previously alluded to, it is undecided in this circuit whether issue preclusion stems from a source of law other than the double jeopardy clause. If this were the case, a defendant could potentially evade the well-documented attachment requirement. Defendants' first problem is that this argument, even assuming that it was made in the first place, was untimely.

    **ii.   Issue is Precluded**

In order to properly delineate why Defendants' issue preclusion contentions are untimely, a brief rundown of the applicable motion practice is necessary. Defendants filed their motions to dismiss arguing for double jeopardy protection in light of the recent *Sanchez Valle* decision. *See* Docket Nos. 139 and 168. In fact, the terms "issue preclusion" and "collateral estoppel" are absent from these motions. *See* Docket Nos. 139 and 168. At best, Defendant Juan Antonio Rosario-Cintrón could argue that he mentioned it in passing when referring to a recent decision by a fellow district judge. *See* Docket No. 165-1 at p. 6, ¶ 18 ("Honorable Gustavo Gelpí held that a ruling made

in state court suppressing the defendant's identification during proceedings under equivalent criminal law, precluded re-litigation of the same issue in federal court which must also suppress the identification.").  Other than the fact that this isolated assertion is conclusive at most, Defendants failed to recognize that the cited opinion "is based on the single sovereign doctrine and not on collateral estoppel."  *See* Docket Nos. 65 and 70 of case 15-cr-396 (GAG).

Subsequently, Magistrate Judge Marcos E. López supplied a report and recommendation to deny both of these motions on double jeopardy grounds.  Docket Nos. 174-75.  Of course, the Magistrate had no reason to address arguments that were never made and correctly limited his analysis to what was actually argued: double jeopardy.  Only when faced with the Magistrate's potent legal reasoning did Defendants raise issue preclusion for the first time.  *See* Docket Nos. 176 and 177 (objections to each report and recommendation).

"We hold categorically that an unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate."  *Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) (citing *Accord Borden v. Secretary of HHS*, 836 F.2d 4, 6 (1st Cir. 1987)).  "Systemic efficiencies would be frustrated and the magistrate's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial [proceedings], and save its knockout punch for the second round."  *Id.* at 991. More directly, "it would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge."  *Id.*

Hence, Defendants' issue preclusion arguments are untimely.  In the alternative, the Court also rules that these arguments—if properly raised—would still fail on the merits.

### iii.    Absence of Privity

Once again, the Court recognizes the open question as to whether issue preclusion exists in criminal cases outside of the double jeopardy context.  However, following the roadmap laid out by the First Circuit some thirty years ago, the Court bypasses any constitutional difficulties by deciding that issue preclusion could not apply here on lack-of-privity grounds.  *See Bonilla Romero*, 836 F.2d 39, 43-44 ("While recognizing the merits of Judge Friendly's argument, we find it unnecessary to decide this important constitutional issue at this time inasmuch as the requirements of collateral estoppel are not satisfied by the facts of this case."); *see also Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.") (collecting Supreme Court cases).

It should be emphasized that "the source of authority of two government entities is not dispositive of whether they are in privity."  *Id.*  (collecting cases). "Therefore, despite extensive arguments . . . and recent decisions . . . regarding Puerto Rico's sovereignty status as a United States territory, resolution of the status issue does not determine whether the federal prosecutors are bound by a pretrial suppression order issued by a Puerto Rico court."  *Id.* at 44.  Therefore, in cases such as this, "we must determine whether there was a close or significant relationship between the federal and Puerto Rico prosecutors during the local [preliminary] hearing[s] or whether the federal

authorities controlled or actively participated in that hearing such that their interests in enforcing federal law were sufficiently represented." *Id.*

Every reason relied upon by the *Bonilla Romero* court is essentially present here; therefore, this Court "hesitate[s] to wax longiloquence simply to hear its own words resonate." *See In re San Juan Dupont Plaza Hotel Fire Litig.*, 989 F. 2d 36, 38 (1st Cir. 1993). The relevant portion of the *Bonilla Romero* analysis reads as follows:

> Appellant presents no evidence whatsoever that federal prosecutors were, or should have been, involved in any way in the local prosecution. There is no indication they provided assistance or advice to the local authorities or at any time even discussed the matter. Federal prosecutors had no reason to believe that a Puerto Rico . . . judge would be deciding any matters affecting a federal prosecution. The [preliminary] hearing[s] concerned purely local charges over which the federal enforcement officials had no authority and thus no interest. We see no reason why the principles of fairness, justice, and judicial economy embodied in the doctrine of collateral estoppel require that this doctrine be expanded to bind a party so remote from the action decided. Therefore, without deciding whether collateral estoppel is generally applicable to criminal prosecutions in the absence of attachment of jeopardy, we hold that, under the facts of this case, Puerto Rico and federal law enforcement officials were not in privity during the local pretrial [preliminary] hearing[s].

*Bonilla Romero*, 836 F.2d at 44.

Rather than end matters here, it should be noted that Defendants appear to imply that the Supreme Court's *Sanchez Valle* decision should overrule or at least erode the First Circuit's aforementioned privity analysis. It remains to be seen whether or not this is the case. However, the Court need not enter this debate to properly rule on the merits of the instant motions. Defendants claim that their respective *de novo* preliminary hearing—the final round of the commonwealth proceedings—both culminated in their favor on January 21, 2016, which is over four months before the *Sanchez Valle* decision was issued. *See* Docket Nos. 139, ¶ 12; 168, ¶ 13. In light of this reality, the aforementioned reasoning is still enough to control today's ruling.

## IV.    DECISION

Longstanding jurisprudence compels a finding that jeopardy never attached to the commonwealth proceedings because no trial was ever held.  Hence, this federal prosecution cannot create double jeopardy.  Further, in addition to the fact that no jeopardy attached to the commonwealth proceedings, any issue preclusion argument presented is untimely and would also fail on lack-of-privity grounds.  For all of the foregoing reasons, Defendants' motions to dismiss are hereby **DENIED**.  *See* Docket Nos. 139 and 168.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 10th day of February, 2017.

*/S/ Daniel R. Domínguez*
DANIEL R. DOMÍNGUEZ
United States District Judge